

**WOOK HWANG**
Partner

345 Park Avenue
New York, NY 10154

**Direct** 212.407.4035
**Main** 212.407.4000
**Fax** 212.937.3847
whwang@loeb.com

Via ECF and FedEx

December 3, 2018

Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Anas Osama Ibrahim Abdin v. CBS Broadcasting Inc. et al.*, No. 1:18-cv-07543-NRB

Dear Judge Buchwald:

We represent Defendants CBS Broadcasting Inc., CBS Interactive Inc. and CBS Corporation (collectively, "CBS") and Netflix, Inc. ("Netflix") in the above-referenced action. In accordance with Rule 2(B) of Your Honor's Individual Practices, we write to request a pre-motion conference in advance of Defendants' anticipated motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Second Amended Complaint ("SAC") of Plaintiff Anas Osama Ibrahim Abdin ("Plaintiff").

**BACKGROUND**

Tardigrades are near-microscopic animals discovered in the 18th century that are known for their ability to survive in Earth's most inhospitable environments and, indeed, to survive unprotected in space.[1] By this action, Plaintiff asserts copyright infringement and related state-law claims based on the fundamental premise that he owns an exclusive monopoly on the right to create space-based fictional works that depict enlarged tardigrades in space.

Plaintiff alleges that he is the creator of an unreleased video game called *Tardigrades*, which he posted in the form of "articles, artwork and videos" on a few Websites (including his own, http://anas-tronaut.blogspot.com/) between 2014-2017. (SAC ¶ 10). The substance of these materials is compiled in a Treatment annexed as Exhibit B to the Complaint (the "Treatment"), which describes a single-player user-driven video game set on a space station orbiting Jupiter in the year 20,000 BC, when Earth's civilizations are "about to discover intergalactic travel." (SAC, Ex. B at 1). The Treatment anticipates that the video game will include "a plot twist" and several themes ("slavery, secrecy, and espionage"), but provides no details concerning the plot or themes. The significance of tardigrades is also left unexplained, except in a few pages of comic-book style artwork showing a boy apparently being bitten by a tardigrade, and noting in comic book bubbles

[1] *See* K. Ingemar Jönsson et al., *Tardigrades survive exposure to space in low Earth orbit*, 18 Current Biology 17 (2008) (available at https://www.cell.com/current-biology/fulltext/S0960-9822(08)00805-1) ("Here, we show that tardigrades are also able to survive space vacuum without loss in survival, and that some specimens even recovered after combined exposure to space vacuum and solar radiation. These results add the first animal to the exclusive and short list of organisms that have survived such exposure."); Joseph Stromberg, *How Does the Tiny Waterbear Survive in Outer Space?*, Smithsonian Magazine (2012) (available at https://www.smithsonianmag.com/science-nature/how-does-the-tiny-waterbear-survive-in-outer-space-30891298/).

Los Angeles New York Chicago Nashville Washington, DC Beijing Hong Kong www.loeb.com

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

17065603

that tardigrades can survive in extreme conditions, including "the vacuum of open space and solar radiation." (*Id.* at 13-15). Plaintiff's Treatment also provides short vignettes briefly describing seven of the game's characters. (*Id.* at 3-6).

Defendants own the rights to the CBS television series *Star Trek: Discovery* ("*Discovery*"), the newest addition to the *Star Trek* franchise. *Discovery* tells various interweaving storylines through the 15 episodes of its first season, which initially aired between September 2017 and February 2018. The series begins with the commencement of a war with the Klingons prompted by the actions of one of *Discovery*'s main characters, Michael Burnham, a Vulcan-raised human played by an African-American female. The Klingon war is the underlying thread throughout most of the season. Later episodes also focus on the USS Discovery's attempts to escape a mirror universe in which they have become stranded. One of the many storylines enmeshed within these two primary story arcs involves a rescued creature named Ripper (of a species considered cousin to the Earth-based tardigrades), whose DNA is necessary to the functioning of the USS Discovery's experimental "mycelial spore drive network" space travel technology.

Based on the common use of enlarged, space-based tardigrades and an assortment of other random "similarities" (e.g., a gay male couple), Plaintiff asserts four claims for copyright infringement, all based on the same alleged infringement but seeking four separate remedies: "Permanent Injunction" (Claim 1); "Actual Damages for Copyright Infringement" (Claim 2); "Statutory Damages for Copyright Infringement" (Claim 3); and "Attorney's Fees and Costs" (Claim 4). Each of these copyright claims also allege violations of the Berne Convention and the Visual Artists Rights Act of 1990 ("VARA"). The SAC also asserts two state law claims for "Constructive Trust" (Claim 5) and for an "Accounting" (Claim 6).

**<u>GROUNDS FOR DISMISSAL</u>**

**A. <u>Plaintiff's Claims for Copyright Infringement (Claims 1-4) Fail to State a Claim</u>**

**1. The Parties' Works Are Not Substantially Similar as a Matter of Law**

This action fundamentally fails and should be dismissed because there are *no* actionable similarities between Plaintiff's Treatment and *Discovery*. A copyright plaintiff must establish, *inter alia*, that "substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Second Circuit law is clear that copyright claims should be dismissed at the pleading stage where either "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Id.* at 63-64 (citation and quotation marks omitted).

"It is a principle fundamental to copyright law that a copyright does not protect an idea," *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996), only an author's original expression of that idea. Similarly, "copyright law does not protect facts, including scientific facts, because they do not owe their origin to an act of authorship." *Perry v. Mary Ann Liebert, Inc.*, 2018 U.S. Dist. LEXIS 93513, *14 (S.D.N.Y. June 4, 2018) (citation and quotation marks omitted); *see also, e.g., Hoehling v. Universal City Studios, Inc*., 618 F.2d 972, 979 (each defendant "had the right to avail himself of the facts contained in Hoehling's book and to use such information, whether correct or incorrect, in his own literary work."). "[A]lso unprotectible are scènes à faire, which [the Second Circuit has]



described as sequences of events which necessarily follow from a common theme," as well as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Nobile v. Watts*, 2018 U.S. App. LEXIS 27068, *3 (2d Cir. Sept. 21, 2018) (affirming Rule 12(b)(6) dismissal of copyright claim for lack of substantial similarity). After extracting such unprotectable elements (*Peter F. Gaito*, 602 F.3d at 66), courts ask whether the "works as a whole [are] substantially similar." *Williams*, 84 F.3d at 590.

Based on these blackletter principles, plaintiff's copyright claims fail at the threshold because the basic plot premise of an enlarged tardigrade in space is not protectable. That tardigrades are able to survive unprotected in space is a scientific fact that is not original to (much less exclusively owned by) Plaintiff. (*See* fn 1 *supra*). Nor can Plaintiff claim ownership of the basic idea of using tardigrades in a fictional space-based story, any more than an author could claim copyright protection over the idea of placing dinosaurs on a fictional island zoo.[2] *See Williams*, 84 F.3d at 589 ("[P]lacing dinosaurs on a prehistoric island far from the mainland amounts to no more than a *scene a faire* in a dinosaur adventure story."). The SAC places great emphasis on the fact that the tardigrades appearing in the parties' respective works are "sized larger than a human being" (SAC ¶ 13), but this type of adaptation of the actual species, naturally flowing from the very idea of a tardigrade-based character, is not protectable either. *See, e.g., Ollie v. Domino's Pizza, Inc.*, 1997 U.S. Dist. LEXIS 12781, at *11-12 (S.D.N.Y. Aug. 22, 1997) ("the humanizing of a domino is an idea not subject to copyright protection"); *Green v. Proctor & Gamble, Inc.*, 709 F. Supp. 418, 421 (S.D.N.Y. 1989) ("the idea of characterizing oral bacteria as humanoid 'cavity makers' is hardly protectible"). And, notwithstanding Plaintiff's allegation to the contrary (*see* SAC ¶ 14), whether or not tardigrades had previously been used in a *Star Trek* work is irrelevant, as there is of course no requirement of prior use or commonness to use basic plot concepts. *See, e.g., Dean v. Cameron*, 53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014) ("Suspending a landmass is a predictable — if not common — way to make a vista more sweeping, breathtaking, and fantastical, and is plainly subject to both the principle that ideas are not protected and the doctrine of *scènes à faire*.").

Here, after extracting the unprotectable use of tardigrades, all that remains are "random similarities scattered throughout the works," which "cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Williams*, 84 F.3d at 590 (citation and quotation marks omitted). Indeed, most of the claimed "similarities" are generic and stock elements that are used in countless works – including, for instance, "a gay relationship" (SAC ¶ 17), "uniforms which delineate rank" (*id.* ¶ 18), and the use of the term "emitter" to describe a light-emitting device (*id.* ¶ 18(f)). Nor does Plaintiff own the stock character elements he claims have been infringed, such as a "Blond White Male" who is a scientist (*id.* ¶ 18(a)), a "darker complexion homosexual male" (*id.* ¶ 18(b)), and a "female of African descent with messy curly hair" (*id.* ¶ 18(d)).[3]

---

[2] Indeed, even before Plaintiff alleges to have posted his works on the Internet in 2014, the idea of using tardigrades in the *Star Trek* franchise was posited by the well-known publication Scientific American. *See* Kyle Hill, *How Tardigrades Saved the Enterprise*, Scientific American (2013) (opining that Captain Kirk should have used tardigrades to save USS Enterprise in 2013 film *Star Trek: Into Darkness*) (available at https://blogs.scientificamerican.com/but-not-simpler/how-tardigrades-saved-the-enterprise/).

[3] *See, e.g., Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999) ("A stock character or basic character type … is not entitled to copyright protection."; no infringement where two characters had same name and were both half-vampire and half-human, of similar age, and shared other characteristics such as "thin-to-medium builds, pale skin, dark messy hair and a slovenly appearance"); *Lewinson v. Henry Holt &*



### 2. Plaintiff Fails to Identify Any Allegedly Infringed Work Other Than the Treatment

Though relying on the registered Treatment for his claims (SAC ¶ 1), Plaintiff confusingly defines the allegedly infringed "Original Work" to encompass other materials published on various websites, including "Adventure Game Studio Forums, Anas-tronaut Blog, You Tube, Steam Games, and Reddit." (SAC ¶ 10). The SAC does not provide hyperlinks to any content Plaintiff claims to have posted on these sites; it does not attach any materials from these sites; and it provides no other means by which Defendants could determine what, if any, additional materials posted on these sites have allegedly been infringed. To the extent Plaintiff purports to rely upon these unidentified materials, the SAC's copyright claims do not satisfy well-settled pleading requirements, and should be dismissed. *See, e.g., Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35-36 (S.D.N.Y. Nov. 17, 1992) (Rule 8 requires copyright plaintiff to allege, *inter alia*, "which specific original works are the subject of the copyright claim") (underline added); *Plunket v. Estate of Conan Doyle*, 2001 U.S. Dist. LEXIS 2001, *14 (S.D.N.Y. Feb. 22, 2001) ("plaintiff has not provided a list of the works potentially at issue in this case and thus fails to meet the first *Kelly* requirement").

### 3. Plaintiff Does Not and Cannot Adequately Allege Access

Plaintiff's copyright claims fail for the additional reason that the SAC's bare and speculative allegations do not plausibly establish that any of Defendants had access to (and, thus, actually copied) Plaintiff's works. To establish access, the SAC must plausibly allege either: (1) "'a particular chain of events' or a 'link' from his work to the creators of the allegedly infringing work," or (2) "that plaintiff's work was 'widely disseminated.'" *Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (citations omitted). Here, the complaint does not allege a particular "chain of events" from Plaintiff's work to anyone involved in the creation of *Discovery*, and instead alleges in conclusory fashion that Plaintiff's works were "widely distributed" when Plaintiff posted his works on certain websites. (SAC ¶ 12). But "the mere fact that [a plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. Dec. 4, 2008); *see also, e.g., Hayes v. Keys*, 2015 U.S. Dist. LEXIS 2860, at *7 (C.D. Cal. Jan. 7, 2015) ("Plaintiffs' sole allegation with regard to access is that the work was uploaded to YouTube in 2009. However, this does not imply it was disseminated widely, and the FAC provides no facts to support such an inference."). Rather, a work is "widely disseminated" when it has had "considerable commercial success" or is "readily available on the market." *Silberstein v. Fox Entm't Group*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. July 19, 2004). Plaintiff's allegations that he posted preliminary materials for his unreleased videogame to a few websites, if true, establishes neither.

### 4. Plaintiff Is Barred from Seeking Statutory Damages or Attorneys' Fees

Plaintiff's claims for statutory damages (Claim 3) and attorneys' fees (Claim 4) pursuant to sections 504(c) and 505 of the Copyright Act independently fail because all of the allegedly infringing episodes of *Discovery* aired before the effective date of registration of the Treatment. The Copyright Act expressly provides that "no award of statutory damages or of attorney's fees, as

---

*Co., LLC*, 659 F. Supp. 2d 547, 567-68 (S.D.N.Y. Sept. 23, 2009) (rhetorically noting that, "[i]f a stock character such as a drunken old bum were a copyrightable character, so would be a drunken suburban housewife, a gesticulating Frenchman, a fire-breathing dragon, a talking cat, a Prussian officer who wears a monocle and clicks his heels, [and] a masked magician…").



provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2) (emphasis added). Here, the effective registration date of the Treatment is June 28, 2018 (SAC, Ex. A), more than three months after the stated first publication of Plaintiff's works in July 2017 (*id.*), and after *Discovery* first aired in September 2017. "Even where the alleged infringement begins before registration and continues after registration, statutory damages and attorney fees are still unavailable." *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2016 U.S. Dist. LEXIS 101119, at *5 (S.D.N.Y. Aug. 2, 2016). Accordingly, any claims for statutory damages and attorneys' fees are barred. *See, e.g., id.*; *Davis v. Gap, Inc.*, 246 F.3d 152, 158 n.1 (2d Cir. 2001).

**5. Plaintiff Has No Claim Under the Berne Convention or VARA**

Plaintiff's claims under the Berne Convention and VARA each also fail. First, the law is clear that there is no private right of action under the Berne Convention, a treaty that is not self-executing. *See, e.g., Kamanou v. Exec. Sec'y of the Comm'n of the Econ. Cmty*, 2012 U.S. Dist. LEXIS 7647, at *19 (S.D.N.Y. Jan. 19, 2012) (plaintiff's "claim under the Berne Convention is not cognizable under U.S. law"); *Elsevier B.V. v. UnitedHealth Grp., Inc.*, 2010 U.S. Dist. LEXIS 3261, at *6 (S.D.N.Y. Jan. 14, 2010) ("Every judge in this district who has considered whether the Berne Convention is self-executing has concluded that it is not."); *Choe v. Fordham Univ. Sch. of Law*, 920 F. Supp. 44, 49 (S.D.N.Y. 1995) ("The Berne Convention … does not confer federal jurisdiction."). Second, VARA also does not apply to Plaintiff's works. VARA "afford[s] protection only to authors of works of visual art – a narrow class of art defined to include paintings, drawings, prints, sculptures, or photographs produced for exhibition purposes, existing in a single copy or limited edition of 200 copies or fewer." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 87 (2d Cir. 1995); 17 U.S.C. § 101. Plaintiff's Treatment falls within none of these categories.

**6. Plaintiff's Claims Regarding Netflix's International Distribution Are Barred Because the Copyright Act Does Not Apply Extraterritorially**

Plaintiff's claims with respect Netflix's *international* distribution of *Discovery* fail for the additional and independent reason that the U.S. Copyright Act does not apply extraterritorially. *See, e.g.*, *Roberts v. Keith*, 2009 U.S. Dist. LEXIS 101412 (S.D.N.Y. Oct. 23, 2009) (dismissing copyright claim arising from allegedly infringing conduct in the U.K. and Europe). The only domestic act attributed to Netflix is having "entered into a contract in the United States with the CBS defendants…." (SAC ¶ 9). But the mere act of licensing allegedly infringing works for foreign use does not constitute copyright infringement. *See, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653, at *18 (S.D.N.Y. Dec. 16, 1996) ("mere authorization and approval [in the United States] of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts").

**B. Plaintiff's State Law Claims for Constructive Trust and Accounting (Claims 5-6) Are Preempted**

Finally, Plaintiff's state law claims are barred, among other reasons, by the fact that each of these claims are preempted by the Copyright Act. *See, e.g., Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. May 3, 2010) (constructive trust claim); *Weber v. Geffen Records*, 63 F. Supp. 2d 458, 462-63 (S.D.N.Y. 1999) (accounting claim).



LOEB &
LOEB LLP

Honorable Naomi Reice Buchwald
December 3, 2018
Page 6

Defendants respectfully request a pre-motion conference to address their anticipated motion to dismiss based on the foregoing. We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Wook Hwang*

Wook Hwang
Partner

cc: Plaintiff's counsel (via ECF)

17065603