UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X  Case No.:1:18-CV-07543 LGS

ANAS OSAMA IBRAHIM ABDIN

                    Plaintiff,                  Hon. Loma G. Schofield

                -against-

CBS BROADCASTING, INC and/or CBS CORP.
AND/OR CBS All ACCESS, and/or CBS INTERACTIVE
Netflix, INC.

                    Defendants.

-----------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS MOTION TO DISMISS

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION ...........................................................................................1

I. STATEMENT OF FACTS...........................................................................2

 1. TARDIGRADES' SURVIVABILITY IN SPACE...............................................2

II. ARGUMENT..............................................................................................3

 1. PROBATIVE AND SUBSTANTIAL/STRIKINGLY SIMILARITY........................3

 2. THE SUBSTANTIAL SIMILARITY TEST....................................................6

   A. ORDINARY OBSERVER IS THE CORRECT STANDARD.................6

   B. MORE DISCERNING OBSERVER TEST IS INAPPLICABLE.................7

     i. SCENES-A-FAIRE...........................................................9

 3. PLAINTIFF ESTABLISHED STRIKING/SUBSTANTIAL SIMILARITY.................9

   A. HEART OF THE WORK ......................................................10

 4. ORIGINALITY OF PLAINTIFF'S GAME/STORYBOARD................................10

 5. THE UNPROTECTABLE ELEMENTS ARGUMENT IS WITHOUT MERIT.............11

 6. DEFENDANTS ANALYSIS OF CORE SIMILARITIES FAILS .........................13

 7. PLAINTIFF'S ACTUAL PROTECTABLE SIMILARITIES................................14

   A. FLOATING DOTS AS REPRESENTATIVE OF SPACE.................14

   B. THE SCRAT V SQRAT COMPARISON IS FALSE.........................15

   C. DEFENDANT'S UNIFORMS COMPARISON FAILS.....................15

   D. MORE THAN DE MINIMIS.................................................16

   E.  ALLEGED MANUFACTURED EVIDENCE.................................18

   F. INSTANTANEOUS SPACE TRAVEL.......................................19

 8. PREDICATE ACT - NETFLIX  ...............................................................19

 9.AWARDING OF ATTORNEY'S FEES.........................................................20

CONCLUSION ............................................................................................21

# TABLE OF AUTHORITIES

Page(s)

CASES

Arica Inst., Inc. v. Palmer.................................................................6
970 F.2d 1067(1992)
Judi Boisson v. Banian, LTD...............................................................5
273 F.3d at 272
Chamberlin v. Uris Sales Corp.,.........................................................11
2 Cir., 150 F.2d 512 (1945)
Davis v. The Gap, Inc., .....................................................................17
246 F.3d 152, 172-73 (2d Cir. 2001)
Diamond Direct, LLC v. Star Diamond Grp., Inc., ....................................7
116 F. Supp. 2d 525, 530 n.31 (S.D.N.Y. 2000)
DiTocco v. Riordan, .........................................................................8
815 F. Supp 2d 655(2011)
Feist Publ'ns, Inc. v. Rural Tel. Serv. Co..........................................3, 10
499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358, (1991))
First Am. Artificial Flowers v. Joseph Markovits Inc., ...............................7
342 F. Supp. 178, 186 (S.D.N.Y. 1972)
Fogerty v. Fantasy, Inc., .................................................................20
510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)
Folio Impressions, Inc. v. Byer California, ..............................................8
937 F.2d 759(1991)
Hogan v. DC Comics, ......................................................................16
48 F. Supp. 2d 298
Kaye v. Cartoon Network, Inc., ...........................................................13
297 F. Supp. 3d 362 (2017)
Klauber Bros. v. Russell-Newman, Inc, ...............................................7, 8
2013 U.S. Dist. LEXIS 42758 (2013)
Laspata DeCaro Studio Corp. v. Rimowa GmbH, ....................................17
2018 U.S. Dist. LEXIS 103347, No. 1:2016cv00934 - Document 110 (2017)
Mattel, Inc. v. Goldberger Doll Mfg. Co., .............................................12
365 F.3d 133 (2d Cir. 2004)
McDonald v. West, .........................................................................12
138 F. Supp. 3d 448 (2015)
Muller v. Anderson, ..........................................................................4
501 F. App'x 81 (2d Cir. 2012)
Muller v. Twentieth Century Fox Film Corp., ...........................................3
794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011)
MyWebGrocer LLC, v. Hometown info, Inc. .............................................3
375 F. 3d 190 (2004)

New Old Music Group , Inc., v. Gottwald.....................................................9, 10, 11
122 F.Supp.3d 78 (2015)
Novelty Textile Mills, Inc. v. Joan Fabrics Corp., .............................................21
558 F. 2d 1090, (2nd Cir. 1977)
Ollie v. Domino's Pizza .......................................................................4, 5
1997 U.S. Dist. LEXIS 12781
Perry v. Mary Ann Liebert, Inc., .............................................................11
2018 U.S. Dist. LEXIS 93513 (2018)
Peter F. Gaito v. Simone Development....................................................8
602 F.3d at 66 (2010)
Peter Starr Production Co. v. Twin  Continental Films, Inc., .......................20
783 F.2d 1440 (9th Cir. 1986)
Psihoyos v. Nat'l Geographic Soc'y, .........................................................7
409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005)
Ringgold v. Black Entm't Television,  Inc., ..................................................17
126 F.3d 70, 76-77 (1997)
Shine v. Childs ...................................................................................1
282 F. 2d 602 (2003)
Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp...............5
562 F.2d 1157 (9th Cir. 1977)
Silberman v. Innovation Luggage, Inc., ....................................................14
2003 U.S. Dist. LEXIS 5420 (2003)
Silberstein v. John Does .................................................................15, 16
1-10, 242 F. App'x 720 (2007)
Trade–Mark Cases, .............................................................................11
100 U.S. 82, 94, 25 L.Ed. 550 (1879)
Update Art, Inc. v. Modiin Pub.  Ltd.,......................................................20
843 F.2d 67 (2d Cir. 1988)
Velez v. Sony Discos, ..........................................................................11
2007 U.S. Dist. LEXIS 5495, (2007)
Walker v. Time Life Films, ....................................................................9
784 F.2d 44, 50 ( 1986 )
Warner Bros. v. American Broadcasting Cos., ...........................................12
720 F.2d 231, 241 (2d Cir. 1983)
Whimsicality, Inc. v. Rubie's Costume Co.,................................................21
891 F.2d 452, 457 (2d Cir. 1989)
Williams v. Crichton, .......................................................................9, 14
84 F.3d 581 (1996)
WPOW, Inc. v. MRLJ Enterprises, .........................................................10
584 F. Supp. 132 (1984)

STATUTES AND RULES

17 U.S.C. § 102b .................................................................................7
17 U.S.C. §  505..................................................................................20

## INTRODUCTION

Defendants incorrectly assert that plaintiff's Third Amended Complaint (hereinafter "TAC") fails to establish, inter alia substantial similarity. The Defendant's arguments do not hold water. 1.) the Defendant incorrectly states that plaintiff game/storyboard was released just before the premier of discovery. Plaintiff's game-storyboard was originally posted in 2014 and continued through 2017 and is greenlit on the Steam platform in 2015. 2.) Defendant's second patently false assertion is that substantial similarity does not exist between, plaintiff's expression, and the Discovery series. When taken as a whole the total concept, feel, theme, and characters of Discovery are not only substantially similar, they are strikingly similar. Defendant infringed plaintiff's work and created a derivative work.[1] 3.) Plaintiff's work does not simply feature an enlarged blue tardigrade. Defendant wrongly equates plaintiff's use of a tardigrade with scenes-a-faire, or scientific facts. Defendant ignores the creativity and expression of plaintiff's characters, then touts the creativity and expression of defendants infringing creature Ripper. Additionally, defendant, includes exhibits of other Tardigrade like creatures each creatively expressed in their own copyrightable way. However, none of defendants' exhibited creatures are similar to the plaintiff's Tardigrade establishing that a Tardigrade can be creatively expressed. Defendant's own moving papers show striking similarity between plaintiff's original work, and the defendants' infringing work. 4.) Plaintiff's work does not feature random commonalities nor is said work from the public domain. The work does feature a creative expression featuring the artwork of the various characters, as well as elements like the shape of the helmet used during space travel which again, is striking similar

---

[1] a ***copyright*** registration certificate, when issued within five years of the first publication of the work, is prima facie evidence of ownership of a valid *copyright, Shine v. Childs 282 F. 2d 602 (2003).*

to plaintiff's work.  Defendants fails to recognize the total concept and feel, instead defendant cherry picks elements to assert its mistaken point.  5.) For purposes of this motion defendants concede access and copying.  6.) Netflix did in fact commit the predicate act of entering into an agreement to further the distribution of the infringing material.  Said act took place in the U.S. and the distribution of the infringing material originated in the United States.  Upon information and belief CBS transferred a master copy(ies) of Star Trek Discovery to Netflix within the United States for distribution worldwide.  6.) The TAC seeks attorneys fees which are in fact collectable under the Copyright Act, pursuant to the discretion of this Court. The TAC did not ask for statutory fees.  7.)  Plaintiff does not wish to waste time, and withdraws the accounting cause of action. Defendant's arguments miss the mark with regard to the allegations in the TAC. 8.) defendants assert that CBS All Access is not a legal entity, however, make no assertion as to what kind of entity it is.  Therefore, for purposes of this motion, Plaintiff withdraws CBS All Access as a defendant.

## I. STATEMENT OF FACTS

### 1. TARDIGRADES' UNIQUE AND WELL-KNOWN ABILITY TO SURVIVE IN SPACE IS NOT AT ISSUE IN THIS MATTER INFRINGEMENT IS THE ISSUE

Plaintiff has never asserted that Tardigrades do not have an ability to survive in space.  The survivability in space is not a subject of comparison between the Plaintiff's and Defendant's work.  Plaintiff used this well know ability in the creation of his game/storyboard.  Defendant's assertion of this point is meritless.  In fact, defendant has attached exhibits of other uses of the Tardigrade in space travel, all of which are original expression of the fact.  Defendant's argument would destroy its own Star Trek copyrights.

Based on this smoke and mirror argument, defendant wants the court to believe that simply because a tardigrade is a natural creature that can survive in space it is factual therefore, any creative expression is unprotectable. Taken on its face the defendant's argument would deny any person or entity the ability to creatively adapt the Tardigrade. No person or entity would ever be able to create a story, play, game, storyboard or any other copyrightable use of the Tardigrade, including the defendants. Defendants' own exhibits prove this assertion incorrect.

Plaintiff's game/storyboard acknowledges the factual aspects, history and the science of the Tardigrade, and then creatively expresses his own version of a space traveling adventure. The defendant's use is substantially similar and infringes that work.

Next, defendant cites an article in the Scientific American "titled *How Tardigrades Saved the Enterprise* (Hwang Decl., i 11, Ex. 10),[7] this article has no bearing whatsoever on the instant matter. The article discusses Captain Kirk stepping in to a radiation filled environment, an environment that would kill a human. The author of the article then states that "Kirk's final act was in ignorance of a powerful ally who could have saved the Enterprise unharmed [Emphasis Added] --the humble water bear" [Tardigrade]. This article was a scientist's way of explaining that a Tardigrade would have better absorbed the radiation, allowing Kirk to stay out of the environment and live. It was not an article suggesting that Tardigrades be used in the same manner as plaintiff's work, nor does it excuse the defendant's infringement.

## 1. ARGUMENT

### 2. THE PARTIES' WORKS AND RESPECTIVE DEPICTIONS OF TARDIGRADE AND CHARACTERS  ESTABLISH PROBATIVE  AND SUBSTANTIAL/STRIKINGLY SIMILARITY

3

In <u>MyWebGrocer LLC, v. Hometown info, Inc.</u> 375 F. 3d 190 (2004), the Second Circuit Court of Appeals stated "To prevail on a claim for copyright infringement, the plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that [**45] are original." Citing, <u>Muller v. Twentieth Century Fox Film Corp.</u>, 794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011) (quoting <u>Feist</u> <u>Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358, (1991))</u>, aff'd subnom. <u>Muller v. Anderson,</u> 501 F. App'x 81 (2d Cir. 2012). In the matter before this court, Plaintiff has protected copyrighted materials and a valid copyright registration. The TAC's first exhibit is a copy of the registration, game/storyboard. Plaintiff has demonstrated in the TAC that the defendant has copied "essential "constituent elements" of plaintiff's work, establishing substantial similarity[2]. Defendants have conceded copying of Plaintiff's work for this motion; Plaintiff holds a valid copyright, thusly fulfilling the requirements of copyright infringement.

Defendant has attached various exhibits that prove the Tardigrade creature can be both fact based, and creatively adapted. Plaintiff agrees. However, as those exhibits establish, the creative expression of the Tardigrade creature cannot be expressed similarly by every creator without infringement. Captain Tardigrade looks nothing like the plaintiff's character. Captain Tardigrade, can speak and uses a spaceship. However, the "appearance, behavior, and traits" of the defendant's work mirrors that of the plaintiff, see, <u>Ollie v. Domino's Pizza</u> 1997 U.S. Dist. LEXIS 12781.

Defendant further erroneously argues that lifesize creatures cannot be protected under copyright. "Although the Dominoid and Donny Domino are similar, in that their bodies consist of

---

[2] Defendant's motion to dismiss has acknowledged that access to plaintiff's work is conceded for purposes of this motion.

a domino with one dot in the top square and two dots in the bottom square, the Court finds that this similarity is attributable to the fact that both works used Domino's trademarked domino as the body. However, the humanizing of a domino is an idea not subject to copyright protection. Other than the common body of the two works, and the fact that both have arms and legs protruding from the body, the works are strikingly dissimilar. Most apparent is the face. Donny Domino's top square has a smiling, open mouth, the centered dot is a nose, and Donny wears sunglasses that rest on the nose. In contrast, the Dominoid does not have a face at all." Ollie v. Domino's Pizza, Inc., 1997 U.S. Dist. LEXIS 12781. The dicta in Ollie v. Domino's Pizza suggests that where there are protectable elements substantial similarity will be found.  In Ollie there were no protectable elements because the only point of similarity was a trademark.  However in this matter, the TAC asserts many protectable elements and similarities. As a practical matter, and solely as an example, life sized characters can be protected as the ninth circuit pointed out.[3]  Defendant's exhibits demonstrate that the creative expression used by the various creators are dissimilar to plaintiff's work and are uniquely individual to that creator.  On the other hand, defendant's use of the Tardigrade, along with the other essential constituent elements of plaintiff's work establish a striking/ substantial similarity in this matter. Probative similarity must first be analyzed. "probative," rather than *"substantial" similarity* is the correct term in referring to the plaintiff's

---

[3]  Mayor Mccheese. In 1973, Sid and Marty Krofft sued McDonald's by claiming that the entire *McDonaldland* premise plagiarized their television show. The Kroffts also claimed that the character Mayor McCheese was a direct rip-off of their character "H.R. Pufnstuf" (a mayor himself). At trial, a jury found in favor of the Kroffts and McDonald's was ordered to pay $50,000. The case was appealed by both parties to the United States Court of Appeals for the Ninth Circuit. The appeals court, in the 1977 decision of *Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.*, reassessed damages in favor of the Kroffts to more than $1,000,000. As a result, McDonald's was ordered to stop producing many of the characters.

5

initial burden of proving actual *copying* by indirect evidence. It is only after actual *copying* is established that one claiming *infringement* then proceeds to demonstrate that the *copying* was improper or unlawful by showing that the second work bears "*substantial similarity*" to protected expression in the earlier work. Probative similarity is established when "Similarities between works are 'probative of copying' if the 'similarities between the two works . . . would not be expected to arise if the works had been created independently...There is an inverse relationship between access and *probative similarity* such that the "greater the proof of access, the less striking the *similarities* must be in order for actual *copying* to be inferred." New Old Music Group, Inc., v Gottwald 122 F. Supp. 3d 78 *; 2015 U.S. Dist. LEXIS 103978 **; 116 U.S.P.Q.2D (BNA) 1465 ***; Copy. L. Rep. (CCH) P30,806.

Essentially the defendants prove to the court that they copied plaintiff. Defendant's further arguments are equally meritless.[4]

## 2. THE SUBSTANTIAL SIMILARITY TEST

### A. ORDINARY OBSERVER IS THE CORRECT STANDARD

The standard of review for substantial similarity is the ordinary observer test. Under the ordinary observer test, "two works are substantially similar where the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same." *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067(1992). Plaintiff's TAC provided the court with a substantial amount of evidence demonstrating the ordinary/lay observer's reaction to the parties works from the media and the general public. Any reasonable jury presented with such a prolific amount of evidence, properly instructed, would be

---

[4] The Wondla exhibit is not a Tardigrade at all, as per the Author it is an elephant-size pill bug. http://wondla.com/home/character-profiles/

able to find the two works substantially similar.  When presented with this overwhelming evidence, the defendant then attempts to flip the script.

## B.   THE MORE DISCERNING OBSERVER TEST IS INAPPLICABLE IN THIS MATTER

The defendant erroneously argues that substantial similarity standard should be changed to the more discerning observer test. "The Second Circuit has clarified that the more discerning test applies only where the copyrighted work is not wholly original....The more discerning test applies only if a plaintiff has imported a substantial portion of its work from the public domain." Klauber Bro. v. Russell Newman, Inc. (citing Hamil Am., 193 F.3d at 100-02)); Diamond Direct,  LLC v. Star Diamond Grp., Inc., 116 F. Supp. 2d 525,  530 n.31 (S.D.N.Y. 2000).  Defendant's argument fails for the reasons stated herein.

Plaintiff's work is wholly original, and independently created, unique expression. It is wholly unlike a photograph.[5]  Defendant has only vaguely argued 17 USC 102b[6] in general regarding unprotectable ideas, facts, scenes a faire and stock elements.  The unprotectable subject matter argument is inapplicable.  Defendant's  argument  that the tardigrade is a creature found in

---

[5] Defendant incorrectly relies on: ("Liability . . . cannot arise to the extent that the similarity between plaintiff's and defendant's work is that both graphically reproduce an object exactly as it occurs in nature.") (citing, among other cases, First Am. Artificial Flowers v. Joseph Markovits Inc., 342 F. Supp. 178, 186 (S.D.N.Y. 1972) ("Any two devices purporting to represent a natural prototype or archetype are likely to be similar, quite apart from copying. Thus, a copyright on a work which bears practically a photographic likeness to the natural article, as here, is likely to prove a relatively weak copyright.")). Psihoyos v. Nat'l Geographic Soc'y, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005). "Only to the extent a photograph captures the characteristics of an object as it occurs in nature, these characteristics are not protectible." Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2][b] (2005) ("Nimmer")

[6] 17 USC 102b," In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"; which state all subject matter which are not protectible under copyright law.  Said discoveries are in the sole domain of patent protection.

nature thus the plaintiff's work contains both protected and unprotected materials; and  the more discerning test should be applied is a false assertion. The basis for using the more discerning test arises when the subject of the work was based on something in nature was clearly rejected in Klauber Bros. v. Russell-Newman, Inc, 2013 U.S. Dist. LEXIS 42758 (2013). "Bon-Ton first argues that the Court should apply the "more discerning" test rather than the "ordinary observer" test, because the allegedly infringing garments contain both protectable and unprotectable elements. Bon-Ton contends that the two patterns contain the unprotected "'idea' of roses and leaves arranged in a curved or lace pattern consisting of roses, leaves and stems." (Bon-Ton Br. 13 (citing Folio Impressions, 937 F.2d at 766 )) Bon-Ton misconstrues when courts apply the "more discerning" test. The Klauber Court held that flowers which are found in nature can be creatively expressed in the artists own rendering of such flowers[7], and therefore the ordinary observer test applies. The ordinary observer standard is equally applicable in this matter.

"While the demarcation between idea and expression may not be susceptible to overly helpful generalization, it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization. The Second Circuit has cautioned, however, that courts should not merely dissect the works at issue into separate components and compare only those elements which are in themselves copyrightable. Thus, in the end, [the] inquiry necessarily focuses on

---

[7] Defendant misquoted Folio by stating a rose design can not be infringed. The complete quote is, "Moreover, though playwrights and poets from William Shakespeare to Gertrude Stein have extolled the beauty of this five-petaled flower, by the rose's very nature one artist's rendering of it will closely resemble another artist's work." Folio Impressions, Inc. v. Byer California, 937 F.2d 759(1991). Plaintiff is trying to convince the court that William Shakespeare or Gertrude Stein were making commentary on copyright protection from their opinions of the rose.

8

whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Peter F. Gaito v. Simone Development, 602 F.3d at 66 (2010)" DiTocco v. Riordan, 815 F. Supp 2d 655(2011).  Plaintiff has expressed his ideas for the game/storyboard in the form of art, audiovisual works and literary works.

### i. SCENES-A-FAIRE

Certain forms of expression are considered so lacking in originality as to be outside the scope of copyright protection, for example, scenes a faire, i.e., "scenes that necessarily result from the choice of a setting or situation," Walker v. Time Life Films, 784 F.2d 44, 50 ( 1986 )

Defendant misconstrues the Jurassic Park case by characterizing it as an example of "classic" scenes a faire uncopyrightable concepts.  "Here, the total concept and feel of the two works differ substantially. The Jurassic Park works are high-tech horror stories with villainous characters and gruesome bloodshed. Books II and III of the Dinosaur World series, by contrast, are adventure stories and, although suspenseful in places, have happy endings. The threats and danger in Books II and III do not arise because of the evils of humans; rather, the threats exist because of the wild nature of dinosaurs and are intended to educate children about the behavior of these now-extinct creatures. The total concept and feel of the Jurassic Park works is of a world out of control, while Williams's Dinosaur World is well under control." Williams v. Crichton, 84 F.3d 581 (1996).  Defendants work copies the total concept and feel of the plaintiff game/storyboard.

### 3.  PLAINTIFF ESTABLISHED STRIKING/SUBSTANTIAL SIMILARITY BETWEEN PLAINTIFF'S PROTECTED WORK AND STAR TREK DISCOVERY.

1. "First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration. If the answer is "yes," then one can

conclude, as a factual proposition, that *copying* may have occurred, New Old Music Group Inc. v. Gottwald, 122 F.Supp.3d 78 (2015). As previously stated the defendant's Ripper along with numerous characters and scenes clearly served as a model, template and/or inspiration for the Star Trek Discovery series. The plaintiff's template was then used to create a derivative work. The TAC along with its exhibits compares the uses by the parties. Based on defendant's instant motion and the comparisons made therein further comparison are attached hereto (Exhibit "2" ).

### A. HEART OF THE WORK

"[t]aking what is in essence the heart of the work is considered a taking of a substantial nature, even if what is actually taken is less than extensive." Further, "additions or modifications which . . . improve[d] upon plaintiff's design but [did] not take away from the fact that defendants had to copy the design in the first place in order to improve upon it." WPOW, Inc. v. MRLJ Enterprises, 584 F. Supp. 132 (1984). The defendants' arguments regarding the quantitative amount that the Tardigrade is present in plaintiff work are incorrect. The Tardigrade appears in the game/storyboard and the videos posted on the internet.   The title of the Plaintiff's game is Tardigrades.  There is no question of the Tardigrade creature's prominence in Plaintiff's work. "The relevant question in each case is whether the ***similarity*** relates to matter that constitutes a substantial portion of [the pre-existing] work—not whether such material constitutes a substantial portion of [the allegedly infringing] work." New Old Music Group (Citations Omitted). In the instant matter, defendant modeled it series based on the plaintiff's game/storyboard. The TAC, along with this opposition clearly demonstrate that the heart of the work was infringed, and then a derivative work was created.

### 4. ORIGINALITY OF PLAINTIFF'S GAME/STORYBOARD

Plaintiff clearly meets the standards of originality required for copyright protection. Plaintiff has designed and conceived all graphics and audiovisual works independently.   In the context of copyright, originality "means only that [a] work ... possesses at least some minimal degree of creativity." <u>Feist</u>, 499 U.S. at 345, 111 S. Ct.  1282, 113 L. Ed. 2d 358. The "requisite level of creativity is extremely low; even a slight amount will suffice." Originality does not mean that the work for which copyright protection is sought must be either novel or unique, In re <u>Trade–Mark Cases</u>, 100 U.S. 82, 94, 25 L.Ed. 550 (1879).  "A copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder, may yield sufficiently distinguishable variations" Cf. <u>Chamberlin v. Uris Sales Corp.</u>, 2 Cir., 150 F.2d 512 (1945).  Based on standards set by the U.S. Supreme Court, and this Circuit, the defendant's argument that the Plaintiff's work is not original, that physical features of the Tardigrades is a scientific fact, and most importantly objects in nature, fail. Scientific facts have been defined as, "the distinction is one between creation and discovery: The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence." <u>Perry v. Mary Ann Liebert, Inc.</u>, 2018 U.S. Dist. LEXIS 93513 (2018).  Again, the plaintiff work is wholly original.

### 5. THE UNPROTECTABLE ELEMENTS ARGUMENT IS WITHOUT MERIT

Hypothetically, if the plaintiff's material did contain unprotectable elements, the rule in the Circuit as stated by the <u>New Old Music Group</u> court holds "the Court must "attempt to extract the unprotectible elements from . . . consideration and ask whether the *protectible elements, standing alone*, are substantially similar." *<u>Velez v. Sony Discos. 2007 U.S. Dist. LEXIS 5495, (2007)</u>* (emphasis in original) [However] "Excessive splintering" of the elements of a work, however, would "result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements."  (citations

omitted). Here defendants argument results in excessive splintering.  Defendants assert matters as red hair, and blond hair in an attempt to break plaintiff's work into pieces for purposes of dismissal.

Defendants motion amounts to excessive splintering of plaintiff's work, and therefore not the rule in this Circuit.  Again, the rule remains total concept and feel. "As such, in considering the "protectible elements" of a work, such elements "can consist of completely original elements devised by the ***copyright*** holder, as well as, other 'original contributions,' such as 'the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work (Citations Omitted)...In other words, unoriginal elements, combined in an original way, can constitute ***protectable*** elements of a copyrighted work." New Old Music Group.

Defendant is attempting convince the court to dissect characters into their basest components, such as "blond white male", "African-American female, and a redhead.  Defendant is ignoring the overall likeness of the characters compared have substantial or striking similarities The second circuit has warned not to simply "dissect the works at issue into separate components and compare only the copyrightable elements." Id. This would narrow copyright too much, and render protection for the selection and  arrangement of public domain elements a dead letter." McDonald v. West, 138 F. Supp. 3d 448 (2015)."At the same time, the visual perception of the character tends to create a dominant impression against which the similarity of a defendant's character may be readily compared, and significant differences readily noted." Warner Bros. v. American   Broadcasting   Cos.,       720    F.2d    231,    241    (2d    Cir.    (1983).

However, the expression of these characters as in facial features like pointy ears, ridged forehead, nanotech prosthetics are protected. Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133 (2d Cir. 2004) "Although in Ideal Toy we described the facial features of the dolls then before us as "standard," we did not say that those facial features were not protected by copyright. To the

12

contrary, we included those features in our comparison of the dolls, noting both the similarity in those features and the differences in others. Judge Weinfeld then found infringement and imposed liability. Id. at 242. " Mattel, Inc. v. Goldberger Doll Mfg. Co., Id.

Defendant incorrectly asserts that plaintiff uses a blond white male that works in biology. Plaintiff does not assert this, plaintiff asserted a space botanist (study of plants). In the STD series, the use of plants mushrooms is key to the spaceship being able to travel quickly, along with a main character with substantially similar likeness to the Plaintiff's, working as an astromycology (study of space mushrooms or plants).

## 6. DEFENDANTS ANALYSIS OF CORE SIMILARITIES FAILS

Defendants argue that works with core similarities are insufficient for copyright infringement. The case which was incorrectly asserted by the Defendant, did not lack similarity because both works used a "core similarity", magical gem.  Instead the court ruled non infringement because the expression of the "core similarity" had no similarity.  "Amphoman has a traditional superhero physique, a long face, no hair and bug eyes that are meant to resemble a frog's eyes. He wears a tight green outfit and has a small green gem on his forehead. Steven wears jeans and a bright red shirt with a yellow star on it, and has a large, permanent, pink gem -- where a typical belly button would be located -- from which he yields his superpower shield." Kaye v. Cartoon Network, Inc., 297 F. Supp. 3d 362 (2017).

Another case incorrectly asserted was Jurassic Park. "The Jurassic Park works are high-tech horror stories with villainous characters and gruesome bloodshed. Books II and III of the Dinosaur World series, by contrast, are adventure stories and, although suspenseful in places, have happy endings. The threats and danger in Books II and III do not arise because of the evils of humans; rather, the threats exist because of the wild nature of dinosaurs and are intended to educate

13

children about the behavior of these now-extinct creatures. The total concept and feel of the Jurassic Park works is of a world out of control, while Williams's Dinosaur World is well under control." Williams v. Crichton, 84 F.3d 581 (1996). Again, the case before this court clearly demonstrates similarities.

## 7. PLAINTIFF'S ACTUAL PROTECTABLE SIMILARITIES

Herein as well as, in the TAC plaintiff has demonstrated that the heart of plaintiff's work was taken in the development of the Star Trek Discovery series, and then spun off derivatively. The majority of the time during the Star Trek Discovery series the defendant's infringing character Ripper is blue, mimicking the plaintiff's character. In fact, Ripper is only represented as not blue approximately for 37 seconds of the 11 hour series, notwithstanding the fact that discoloration can be due to shadowing. With respect to the defendants argument that plaintiff's Tardigrade and space travel are not unique, we refer the court's attention to the various youtube videos which the defendant touts as fact. These videos establish that Tardigrades in nature, do not possess the ability of Plaintiff's Tardigrade. Proving that plaintiff's expression and creation are original[8]. A reasonable jury could find that infringement has occurred.

### A. FLOATING DOTS AS A LIFEFORM

Defendant completely misses the mark with respect to its representation to the court that the scenes from "the Expanse" are not representative of space travel. For example, floating blue dots are commonly used in science fiction to depict strange phenomena in space.

---

[8] "While the subject of the photograph may be so familiar as to have reached iconic status, novelty of subject matter is not required for copyright protection. Rather, plaintiff must show that the copyrighted work is an original creation, and the Second Circuit has noted that "the quantity of originality that need be shown is modest -- only a dash of it will do." Silberman v. Innovation Luggage, Inc., 2003 U.S. Dist. LEXIS 5420 (2003)

The Expanse series centers on a protomolecule, lifeform which when it comes in contact with a biological organism creates a hybrid creature. The expression in The Expanse, the protomolecule is not blue dots, but rather luminous blue fireflies.[9] It does not represent space according to the creators.

## B. THE SCRAT V SQRAT COMPARISON IS FALSE

Defendant attempts to convince the court erroneously that there is no similarity between a drawn two-dimensional character compared to a three-dimensional lifelike character. The case cited by the defendant is again misquoted; there was no similarity because the two characters compared differed substantially and not because of differing dimensions. "We initially note that the two characters differ substantially with respect to almost every individual element, such as the shape of their bodies, heads, limbs, feet, hands, tail, and teeth, and the presence or absence of whiskers, eyebrows, and a navel. The two creations also differ markedly in terms of their "total concept and feel." Boisson, 273 F.3d at 272 (internal quotation marks omitted). In the District Court's apt description, Silberstein's "Sqrat is a rather crudely drawn two-dimensional, monochromatic, static character," whereas defendants' "Scrat is portrayed as existing and moving in three dimensions, and his fur, nose, eyes, mouth, and extremities are rendered in lifelike detail and realistic color and shade." See Silberstein v. John Does 1-10, 242 F. App'x 720 (2007). The comparisons submitted in the instant matter are quite the opposite.

## C. DEFENDANT'S UNIFORMS COMPARISON FAILS

---

[9] "The protomolecule is not a specific thing that takes control of something else. It's an evolving entity that takes different forms as a result of whatever it's assembling at the moment. The show's creators decided to indicate the presence of the protomolecule with the luminous blue fireflies seen in previous episodes. They did away with the fireflies for the hybrid but kept the color blue that appears to shine out through the interstices in the dark shell of the hybrid's body." https://www.forbes.com/sites/kevinmurnane/2017/04/23/science-and-tech-in-syfys-the-expanse-coming-face-to-face-with-the-protomolecule/#13b51cf82fc8

The comparison of uniforms which show similar status and the similar egg shaped space suit was made to demonstrate the total feel and concept of the whole work. Plaintiff attempts to convince the court erroneously that a character's shared characteristics such as "thin-to-medium builds, pale skin, dark messy hair and a slovenly appearance" are not enough to prove infringement. However, their cases demosntrate there is no similarity in appearance, "two characters are drawn quite differently. Plaintiffs' Gaunt, although he changes somewhat from scene to scene, has an oval face with a long nose; his hair is usually pictured as a bushy clump on the side of his head, and he wears a jacket with a large collar with a box-like pattern and similar cuffs. Defendants' Gaunt has a heart-shaped, angular face, with pronounced cheekbones and hair that hangs in long strands down the sides of his face and comes to a widow's peak in the middle of his forehead; he has tattoos on both arms and usually wears a black leather motorcycle jacket." Hogan v. DC Comics, 48 F. Supp. 2d 298

### D. DEFENDANTS INFRINGEMENT AMOUNTS TO MORE THAN DE MINIMIS COPYING

Defendant admits to access and copying; and uses "de minimis" copying as a defense to copyright infringement. In a failed argument, Defendant's asserts Star Trek Discovery consisting of eleven hours of "rich and varied stories", implicitly demonstrates any amount taken from the Plaintiff's work should be considered de minimis. Case law in this District, negates defendant's argument. "Based on the Court's observation, the two shots focusing on the image with the couple and dog clearly identify the image and contribute substantially to the [infringing] video." See, e.g., Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 76-77 (1997) see also, (use of copyrighted quilt design as set dressing for 26 to 27 seconds in a 30-minute sitcom episode was not de minimis)." Laspata DeCaro Studio Corp. v. Rimowa GmbH, 2018 U.S. Dist. LEXIS 103347, No.

1:2016cv00934 - Document 110 (2017).  Laspata holds, even a minute use, totalling mere seconds in an episode is not "de minimis". Fortuitously, in opposition to defendant's argument, in Laspata the defendant's work was not featured prominently in the work, but rather was mere set dressing.

In contrast, infringing works taken by the Defendant are prominently featured in Star Trek Discovery as the main characters, Tardigrade and its derivative spore drive/DNA. The so called spore drive is simply a "character", in the story that serves to keep the overarching Tardigrade centered plot in motion. The Spore drive becomes conjoined to the Tardigrade creature or its DNA equivalent in order to function.[10]

"By relying on the principle of de minimis non curat lex, defendants argue that the actual copying was so trivial that the law will not impose consequences for it." Davis v. The Gap, Inc., 246 F.3d 152, 172-73 (2d Cir. 2001).  As stated above, the main characters, the Tardigrade, and it's derivative replacement; are essential in  Star Trek Discovery.

Defendant's arguments about Tardigrades surviving in space, and moving through space are of no avail.  Plaintiff's work again concedes the fact that Tardigrades can survive in space. Tardigrades do not quickly move through space in nature.  Tardigrades do not, envelop human beings in nature they are as defendant points out microscopic.  Giant blue tardigrades cannot be found in nature, and surely do not assist or interact with the crew on a spaceship.  Plaintiff was the first to compile such works and expressed the creation in his game/storyboard.  The defendants concede access for purposes of their motion, and substantial similarity is demonstrated in the TAC.

---

[10] "the spore drive technology of the U.S.S. Discovery is surprising in itself and also as a story device that allows the crew and audience to enjoy more surprises – from Michael Burnham's surprising personal tour of locales rich in Trek lore, including Janus VI, Starbase 11 and Amerind ("Context is for Kings"), to the entire crew's journey to the Mirror Universe ("Into the Forest I Go"). But the spore drive is more than merely a plot device – it is, in essence, a character itself, *symbolized by the Tardigrade* and the forest metaphor. The visual of the first use of the spore drive remains one of the most surprising visuals of the entire season." www.startrek.com/article/dscundefineds-top-8-most-surprising-moments

Defendant's argument regarding the use of white dots on blue background is equally meritless. A comparison of the parties works demonstrates, not only did the defendant's copy the white dot, blue background they also have the exact same characters, during the same scenes using that background. That striking similarity does not occur in nature or in stock footage.

### E. ALLEGED MANUFACTURED EVIDENCE

Plaintiff has stated that his work contains a homosexual relationship and has homosexual connotations throughout. Defendant has either not reviewed Plaintiff's work closely or is out of touch with the LGBT community at large to make such unfounded accusations.

Plaintiff merely pointing out a sexual encounter between Aziz and Carter in the bathroom scene. Carter and Aziz bear a striking resemblance to the gay couple, Stamets and Dr. Culber from the defendants work. The plaintiff's video clearly shows a glory hole and tapping of feet.[11] [12] These situations are clearly sexual in nature."If you managed to discover a newly drilled hole on one of the toilets dividers by Aziz.[13] [14]  Its is unbelievable that a commercial broadcast television network would be so out of touch and not inclusive of a community of people that is so underrepresented in television such as the gay, and lesbian.

Next. defendants argue that two separate and distinct videos are spliced together in order to manufacture evidence. Again, Defendant shows a lack of diligence. The video of the figure

---

[11]http://www.washingtonpost.com/wp-dyn/content/article/2007/08/29/AR2007082902435.html?noredirect=on.

[12] https://www.huffingtonpost.com/mark-simpson/the-global-glory-hole_b_3894804.html "The glory hole itself is the ultimate symbol of anonymous "no-strings" sex: an erect, disembodied c__k sticking through a wall.

[13] http://anas-tronaut.blogspot.com/2017/06/

[14] http://anas-tronaut.blogspot.com/2014/11/who-is-aziz.html; http://anas-tronaut.blogspot.com/2015/02/who-is-ty.html

walking is in the ethereal space.[15]  The figure with the glowing round machine place on his head

is the method to enter such cyber/ethereal space.[16]  The two videos were combined to show the

similarity to plaintiff's work and solely for the convenience of the court.  In fact, in Star Trek

Discovery, Michael Burnham enters similarly in to the astral plane/astral projection using a device

on her head, mimicking plaintiff's version of glowing device which takes his character into

ethereal space. The plaintiff's video clearly demonstrates the infringement upon his work. Again,

the evidence presented was made by plaintiff to establish the similarity to his body of work. (See

Declaration of Anas Abdin).

### F. INSTANTANEOUS SPACE TRAVEL

Defendant argues that the Plaintiff's work does not feature instantaneous space travel as in

the infringing work.  Plaintiff clearly shows Carter within surrounded by blue glowing lights which

is referenced as being "inside a wormhole".[17]  "A wormhole, also known as an Einstein-Rosen

bridge is a theoretical method of folding space and time so that you could connect two places in

space together. You could then travel instantaneously from one place to another.  Unfortunately,

it really seems like wormholes will need to remain in the realm of science fiction"[18]


### 8. PREDICATE ACT - NETFLIX

The Second Circuit has ruled that such a predicate act may include the reproduction of the

copyrighted material, preliminary to its publication or distribution abroad. See Update Art, Inc. v.

---

[15] "Ethereal World -Cyberspace"
https://www.reddit.com/r/gamedev/comments/6kkpwk/screenshot_saturday_335_exclusive_look/djmz8z1/

[16] "another way to enter another cyberdigital-space!"
https://www.adventuregamestudio.co.uk/forums/index.php?topic=50444.msg636568020#msg636568020

[17] https://www.youtube.com/watch?v=6S1bRyZ0vhk

[18] https://phys.org/news/2015-12-wormholes.html

Modiin Pub. Ltd., 843 F.2d 67 (2d Cir. 1988) (possibility that reproduction of poster by employee of defendant occurred in United States, although infringing activity occurred in Israel, was enough to confer subject matter jurisdiction); Peter Starr Production Co. v. Twin Continental Films, Inc., 783 F.2d 1440 (9th Cir. 1986); see also Nimmer, para. 17.02 at 17-19 ("if and to the extent a part of an 'act of infringement occurs within the United States, then, although such act is completed within a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable [*7] under American copyright law."). In the case before this Court infringement has occurred, and the defendant Netflix is equally liable.

### 9. AWARDING OF ATTORNEY'S FEES

§505 REMEDIES FOR INFRINGEMENT: COSTS AND ATTORNEY'S FEES

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. The court's award of attorney fees under the Copyright Act, 17 U.S.C. § 505, is also justified based on the court's finding of willfulness and is in line with the statutory goal of deterrence.   See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

The Second Circuit's standard for awarding attorneys' fees is also skewed in favor of the plaintiff. The standard for the prevailing plaintiff is quite lenient-fees are generally' awarded "as a matter of course."45 The rationale is that a fee award- to the prevailing plaintiff satisfies the purported purpose of the statute. It has been held that attorneys' fees are "particularly appropriate where plaintiff is a small business... The "willfulness" or "deliberateness" of infringement is the most common reason given by the courts when awarding fees to the

prevailing plaintiff. " See, e.g., Roth, 787 F.2d at 57; Diamond, 745 F.2d at 148. ,Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 457 (2d Cir. 1989).

**CONCLUSION**

**DEFENDANTS FAILS TO ESTABLISH THAT AS A MATTER OF LAW IT IS ENTITLED TO DISMISS PLAINTIFF'S CLAIMS**

In order to prevail on a motion to dismiss, the defendant must establish that no reasonable jury could find substantial similarity. Defendants shift the test to the more discerning test alleging that fact, and scenes-a-faire underlie plaintiff's claims. Once again, such assertions fail. The defendants use magic to make assertions about white males, hair color etc. while ignoring the overall concept and feel, as well as, other factors which clearly establish not only substantial similarity, they establish striking similarity. Defendant makes such arguments ad nauseum. Said arguments are made by twisting the case law, as well as the facts of this case. The defendants solely point to minor differences, while the TAC establishes the major similarities. It is well established that minor differences are not dispositive in a copyright case, Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F. 2d 1090, (2nd Cir. 1977).

March 5, 2019                                John Johnson & Associates
                                            Allan Chan & Associates
                                            /s/ John Johnson
                                            /s/ Allan Chan

                                            Attorneys for Plaintiff