UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ANAS OSAMA IBRAHIM ABDIN,                                   :
                                                            :
                Plaintiff,                                  :
                                                            :
                                                            :   No. 1:18-cv-07543-LGS
        v.                                                  :
                                                            :
CBS BROADCASTING, INC and/or CBS CORP.                      :   Hon. Lorna G. Schofield
and/or CBS ALL ACCESS, and/or CBS                           :
INTERACTIVE Netflix, INC.,                                  :
                                                            :
                Defendants.                                 :
                                                            :
------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**


LOEB & LOEB LLP
Wook Hwang
Nathalie Russell
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants CBS Broadcasting Inc., CBS Corporation, CBS Interactive Inc., and Netflix, Inc.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     PLAINTIFF'S COPYRIGHT CLAIMS FAIL IN THEIR ENTIRETY FOR LACK OF SUBSTANTIAL SIMILARITY ................................................................. 2

    A.     Plaintiff's Opposition Fundamentally Misconstrues the Substantial Similarity Test ............................................................................................. 2

    B.     Defendants' *Discovery* Series Is Not Remotely Similar to the Protectable Elements of Plaintiff's Game Concept ............................................................ 5

        1.     *Discovery*'s Tardigrade Has *No* Features in Common with Any Protectable Elements of Plaintiff's Tardigrade .............................................. 5

        2.     The Purported "Similarities" Among Certain of the Parties' Characters Are Only to Stock and Unprotectable Elements ....................... 7

        3.     None of the Other Random "Similarities" Scattered Throughout the Parties' Works Are Actionable .............................................................. 9

II.     PLAINTIFF DOES NOT ALLEGE ANY INFRINGING PREDICATE ACT IN THE UNITED STATES AGAINST NETFLIX ................................................... 10

III.     PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES IS UNEQUIVOCALLY BARRED BY SECTION 412 OF THE COPYRIGHT ACT .......................................... 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Murdoch*,
  2011 U.S. Dist. LEXIS 79543 (S.D.N.Y. May 27, 2011), *adopted by*,
  2011 U.S. Dist. LEXIS 79503 (S.D.N.Y. July 14, 2011) ................................................. 8

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011) ............................................................................. 9

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ........................................................................................... 3

*Dean v. Cameron*,
  53 F. Supp. 3d 641 (S.D.N.Y. 2014) ............................................................................... 6

*Eden Toys, Inc. v. Marshall Field & Co.*,
  675 F.2d 498 (2d Cir. 1982) ........................................................................................... 5

*Hayuk v. Starbucks Corp.*,
  157 F. Supp. 3d 285 (S.D.N.Y. 2016) ............................................................................. 7

*Jackson v. N.Y. State Office of Mental Health*,
  2012 U.S. Dist. LEXIS 114531 (S.D.N.Y. Aug. 13, 2012), *adopted by*,
  2012 U.S. Dist. LEXIS 165876 (S.D.N.Y. Nov 15, 2012) ............................................ 10

*Kaye v. Cartoon Network, Inc.*,
  297 F. Supp. 3d 362 (S.D.N.Y. 2017) (Schofield, J.) ............................................. 4, 5, 9

*Lewinson v. Henry Holt & Co., LLC*,
  659 F. Supp. 2d 547 (S.D.N.Y. 2009) .......................................................................... 3, 9

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
  2014 U.S. Dist. LEXIS 152051 (S.D.N.Y. Aug. 19, 2014) ............................................. 3

*Perry v. Mary Ann Liebert, Inc.*,
  2018 U.S. Dist. LEXIS 93513 (S.D.N.Y. June 4, 2018) ................................................. 4

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ........................................................................................... 3, 4

*Psihoyos v. Nat'l Geographic Soc'y*,
  409 F. Supp. 2d 268 (S.D.N.Y. 2005) ............................................................................. 4

*Ringgold v. Black Entm't TV, Inc.*,
  126 F.3d 70 (2d Cir. 1997) .............................................................................................. 9

*Silberstein v. John Does 1-10*,
　242 F. App'x 720 (2d Cir. 2007) .................................................................................................. 7

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
　2016 U.S. Dist. LEXIS 101119 (S.D.N.Y. Aug. 2, 2016) ........................................................... 10

*Warner Bros., Inc. v. ABC*,
　720 F.2d 231 (2d Cir. 1983) ......................................................................................................... 7

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
　354 F.3d 112 (2d Cir. 2003) ......................................................................................................... 2

*Williams v. Crichton*,
　84 F.3d 581 (2d Cir. 1996) ............................................................................................... 4-5, 9, 10

*Zalewski v. Cicero Builder Dev. Inc.*,
　754 F.3d 95 (2d Cir. 2014) ....................................................................................................... 3, 4


**Statutes And Other Authorities**

17 U.S.C. § 412(2) ........................................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1, 4

Defendants respectfully submit this reply memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's TAC for failure to state a claim upon which relief may be granted.[1]

## PRELIMINARY STATEMENT

By his opposition, Plaintiff agrees that the "heart" of this meritless action is his tardigrade (Opp. Br. 10), an actual organism that Plaintiff concedes is well-known for its unique ability to survive unprotected in space. (Opp. Br. 2; Mov. Br. 4-6). The TAC's identification of all of Plaintiff's allegedly infringed works has made clear that the *only* meaningful depiction of his tardigrade is a *single* 13-second video clip Plaintiff posted to YouTube just two months before *Discovery* aired. (Mov. Br. 9; Video Compilation at 29:20-33; Hwang Decl. ¶ 14, Ex. 13). Setting aside the virtual impossibility that Defendants would or could have scripted, produced, shot, edited and broadcast its allegedly infringing series in mere months after they immediately saw and resolved to copy this 13-second amateur game teaser – a fantastical factual premise presumed to be true for purposes of this motion – this action fails as a matter of law because the parties' works are not substantially (or remotely) similar.

Plaintiff's opposition attempts to confuse the straightforward substantial similarity inquiry with irrelevant and erroneous propositions of copyright law, including by characterizing this motion as one hinging on whether this 13-second clip (or any other element of Plaintiff's game concept) contains any copyrightable expression at all. (Opp. Br. 10-13). Plaintiff misses the point entirely. The critical inquiry on the substantial similarity analysis is, of course, whether any of the identifiable *similarities* are comprised of such protectable expression and, if so, whether these similarities can be considered *substantial* when comparing the total concept and feel of the parties'

---

[1] Unless otherwise defined herein, capitalized terms are defined in Defendants' moving brief (DE 56). "Mov. Br." and "Opp. Br." refer, respectively, to Defendants' moving brief and Plaintiff's opposition brief (DE 62).

"works as a whole," unconfined to the few random and trivial side-by-side similarities that Plaintiff has plucked out of *Discovery*'s 11-hour first season.

A comparison of the parties' works leaves no doubt that Plaintiff's copyright claims fail as a matter of law at both of these steps. Accordingly, this action should be dismissed in its entirety, with prejudice.[2]

ARGUMENT

I. **PLAINTIFF'S COPYRIGHT CLAIMS FAIL IN THEIR ENTIRETY FOR LACK OF SUBSTANTIAL SIMILARITY**

    A. <u>**Plaintiff's Opposition Fundamentally Misconstrues the Substantial Similarity Test**</u>

Plaintiff's opposition relies on a number of erroneous legal pronouncements in an effort to confuse the settled standards in the Second Circuit applicable to determining substantial similarity. (*See* Mov. Br. 15-16).

<u>First</u>, Plaintiff seeks to do away with the substantial similarity test altogether by remarkably contending (Opp. Br. 17) that the starship Discovery's mycelial spore network DASH drive – which has *no* analog in Plaintiff's game concept – is an infringing "derivative work" merely because it relies upon tardigrade *DNA* to function. (Mov. Br. 12). Plaintiff's legal premise appears to be that merely using the DNA of an allegedly infringing character (in this case, Ripper) necessarily creates a newly infringing "derivative" work, irrespective of whether the purported derivative work is substantially similar to Plaintiff's work. That premise is wrong. The test for determining whether an infringing derivative work has been created is the same as with any other exclusive right conferred by copyright – substantial similarity. *See, e.g., Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003) ("no distinction" between determining whether derivative

---

[2] Plaintiff has withdrawn his meritless common law accounting claim (Opp. Br. 2), and all that remains in this action are the three copyright claims asserted in the TAC, all for the same alleged infringement but seeking different forms of relief.

2

work right and reproduction right have been infringed, both requiring substantial similarity to plaintiff's work); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 143 n.9 (2d Cir. 1998) ("if the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work"); *Mayimba Music, Inc. v. Sony Corp. of Am.*, 2014 U.S. Dist. LEXIS 152051, at *53 (S.D.N.Y. Aug. 19, 2014) ("The only way for Mayimba to prove that the remix was a derivative of Arias' song would be for Mayimba to prove that … a substantial similarity exists between the remix and the protectable elements of Arias' song, *i.e.* to prove that the remix infringes its copyright."). And there is *no* similarity between Defendants' DASH drive and *anything* in Plaintiff's work, including the "tardigrade-hug" sequence shown in Plaintiff's 13-second clip. (Mov. Br. 9).

Second, Plaintiff appears to erroneously suggest that the issue of substantial similarity cannot be addressed at this stage of the action because "[p]robative similarity must first be analyzed." (Opp. Br. 5). That is wrong too. The "probative similarity" inquiry asks only whether both the protectable and unprotectable elements of "the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 563 (S.D.N.Y. 2009). Where, as here, copying is not challenged for purposes of a motion to dismiss, this inquiry is irrelevant to the "substantial similarity" determination, which asks instead whether "the copying is *illegal* because a substantial similarity exists between the defendant's work and the *protectible* elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (emphasis added) (citation omitted); *see also Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 101 (2d Cir. 2014) (in contrast to the substantial similarity inquiry, "similarity that relates to unprotected elements is probative only of copying — not wrongful copying — and is referred to as 'probative similarity'"). And Second Circuit courts

3

are clear that copyright claims can and should be dismissed at the pleading stage where substantial similarity is lacking, *Peter F. Gaito*, 602 F.3d at 63, as reflected by the multitude of decisions in this District granting Rule 12(b)(6) motions on this basis. *See, e.g., Kaye v. Cartoon Network, Inc.*, 297 F. Supp. 3d 362, 366 (S.D.N.Y. 2017) (Schofield, J.); Mov. Br. 16 (collecting cases).

Third, Plaintiff contends (Opp. Br. 6-9) that the ordinary observer test, rather than the "more discerning" ordinary observer test, should be applied in this case. That is also wrong. As this Court has observed, the "'more discerning' test applies when a plaintiff's work contains both protectable and un-protectable elements." *Kaye*, 297 F. Supp. 3d at 367; *see also Peter F. Gaito*, 602 F.3d at 66 ("when faced with works that have both protectible and unprotectible elements, our analysis must be more discerning, and …. we instead must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar") (citations and quotation marks omitted). Not only do unprotectable elements exist in Plaintiff's work, but the very "heart" of his game concept (Opp. Br. 10) is a real-life organism whose physical features and characteristic ability to survive unprotected in space lie in the public domain, and cannot be "infringed" as a matter of law. *See, e.g., Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) ("the characteristics of an object as it occurs in nature … are not protectable"); *Perry v. Mary Ann Liebert, Inc.*, 2018 U.S. Dist. LEXIS 93513, at *14 (S.D.N.Y. June 4, 2018) ("copyright law does not protect facts, including scientific facts, because they do not owe their origin to an act of authorship") (citation and quotation marks omitted).

In all events, irrespective of which test is applied, the law is clear that the substantial similarity determination requires that there be "similarity that exists between the *protected* elements of a work and another work" because even "a close similarity between it and a copy may prove only copying, not wrongful copying." *Zalewski*, 754 F.3d at 101 (emphasis added); *Peter F. Gaito*, 602 F.3d at 63. With these precepts in mind, and considering the "works as a whole," *Williams v.*

4

*Crichton*, 84 F.3d 581, 590 (2d Cir. 1996), "the task is to compare holistically the works' 'total concept and overall feel . . . as instructed by our good eyes and common sense.'" *Kaye*, 297 F. Supp. 3d at 367 (quoting *Peter F. Gaito*, 602 F.3d at 66).

> B. **Defendants'** ***Discovery*** **Series Is Not Remotely Similar to the Protectable Elements of Plaintiff's Game Concept**
>
> 1. ***Discovery*'s Tardigrade Has *No* Features in Common with Any Protectable Elements of Plaintiff's Tardigrade**

Plaintiff's opposition simply ignores the axiomatic principle that allegedly infringing similarities must be to protectable elements. With respect to the "heart" of Plaintiff's work – the tardigrade – the opposition thus fails to meaningfully address the incontrovertible fact that the only similarities in the graphical depiction of the parties' tardigrades are unprotectable features common to actual tardigrades.[3] (Mov. Br. 5, 17). These physical features are not owned by Plaintiff, a conclusion the opposition implicitly concedes (Opp. Br. 2, 17). *See, e.g., Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982) (no infringement where "any similarity between [the parties' snowmen] would appear to the ordinary observer to result solely from the fact that both are snowmen").

Ignoring real tardigrades' actual physical features, the *only* commonalities that exist here are that the parties' fictional tardigrades are enlarged and able to travel unprotected through space. Plaintiff appears to contend that these are enough to establish substantial similarity. (Opp. Br. 14). They are not. Both of these adaptations are obvious and basic ideas and – in light of tardigrades' well-known ability to survive in space without protection – predictable *scenes a faire* in any fictional space-based work depicting a tardigrade. *See* Mov. Br. 18-20 (collecting cases). Even if

---

[3] Plaintiff instead attempts to shift the focus by contending that his tardigrade is different from other fictional tardigrades that predate his, noting, for instance, that "Captain Tardigrade looks nothing like the plaintiff's character." (Opp. Br. 4). That is the wrong comparison; his tardigrade indisputably depicts the unique physical features common to actual tardigrades, and it is those that are unprotectable.

these adaptations were original to Plaintiff, they would thus be unprotectable. *See, e.g., Dean v. Cameron*, 53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014) ("Suspending a landmass is a predictable — if not common — way to make a vista more sweeping, breathtaking, and fantastical, and is plainly subject to both the principle that ideas are not protected and the doctrine of *scènes à faire*.").

These elements are *not* original to him, however. The 2010 book *The Search for WondLa* features an enlarged tardigrade described as "gargantuan" and "behemoth," and with a brethren herd of "giant tardigrades" described as "[l]arge glowing life-forms" that are "carried by strange and wondrous currents." (*See* Hwang Decl. ¶ 6, Ex. 5). Captain Tardigrade also predates Plaintiff's 13-second video (by over two years), and is also enlarged and space-faring. (*Id.* ¶ 10, Ex. 9). These materials need not be considered to conclude that enlarging a microscopic creature and extending its well-known space *survival* ability to space *travel* are generic ideas and obvious *scenes a faire*. But there is no question that the Court can take judicial notice to confirm that enlarged space-faring tardigrades are not original to Plaintiff – yet another reason that this action is fatally flawed. (Mov. Br. 3 n.2 (citing cases regarding judicial notice of prior works)).

In a bid to manufacture similarities where none exist, Plaintiff's opposition continues to mischaracterize the parties' works. Among other things, Plaintiff continues to claim that Defendants' Ripper is blue. (Opp. Br. 14). Though Ripper is seen in blue lighting or bathed in blue mycelial spores (Plaintiff does not own blue lighting), that Ripper *himself* is not blue is easily confirmed by watching the relevant portions of the two episodes in which he appears. Plaintiff's explanation (Opp. Br. 14) that Ripper is not blue for "only" 37 seconds of Defendants' 11-hour series is misleading and meaningless, because Ripper's appearance in the two episodes consists of brief snippets lasting a total of a few dozen seconds. Plaintiff's additional argument that, unlike Plaintiff's tardigrade, actual "[t]ardigrades do not, envelop human beings in nature" (Opp. Br. 17) is also misleading and irrelevant, because Defendants' Ripper also does not "envelop" humans. And

Plaintiff's explanation (*id.*) that real-life tardigrades "do not assist or interact with the crew on a spaceship" is just as irrelevant, because, unlike Ripper, neither does Plaintiff's tardigrade.[4]

In short, there are *no* similarities at all in the protectable expression between the parties' tardigrades. That alone ends the inquiry as to whether the "heart" of his work has been infringed. It has not, a conclusion made even clearer when considering the "total concept and feel" of the tardigrades' vastly distinct characteristics and story arcs in the context of the parties' works as a whole.[5] *See, e.g., Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 292 (S.D.N.Y. 2016) ("[Second Circuit courts] have found certain similarities to exist as to portions of an allegedly infringing work, but nonetheless held that substantial similarity did not exist because of overwhelming dissimilarities in the works when compared in 'total concept and overall feel'") (citation omitted); *Warner Bros., Inc. v. ABC*, 720 F.2d 231, 241 (2d Cir. 1983) (with respect to "graphic and three-dimensional works" in particular, "dissimilarities between two works of this sort inevitably lessen the similarity that would otherwise exist between the total perceptions of the two works"); *Silberstein v. John Does 1-10*, 242 F. App'x 720, 722 (2d Cir. 2007).

2. **The Purported "Similarities" Among Certain of the Parties' Characters Are Only to Stock and Unprotectable Elements**

Plaintiff's sole argument (Opp. Br. 12) concerning the purported character infringements is that Defendants are "dissecting" his characters into their "'basest components," including "blond white male," "African-American female" and a "redhead." But these are *Plaintiff's* terms used in

---

[4] Plaintiff has dropped his false contention that his tardigrade can travel "instantaneously" through space, as alleged in the complaint. (TAC ¶ 24). Instead, there is "instantaneous space travel" *generally* in both works, because Plaintiff's work features a wormhole. (Opp. Br. 19). This of course is irrelevant – Plaintiff did not come up with wormholes (Einstein did), and they have long been featured in various science fiction works, including prior *Star Trek* series.

[5] In Plaintiff's works, his tardigrade's only meaningful appearance is the single 13-second clip showing his "tardigrade-hug" sequence. (Mov. Br. 9). No information is provided other than what appears in the video itself, except a single blog post explaining that the tardigrade can travel in space. (*Id.* at 10). By contrast, Ripper, who does not "hug" or envelop any humans, appears in *Discovery* as part of the intricate storyline described in the moving brief. (Mov. Br. 10-13).

the complaint to describe his own characters, based on the nondescript few-sentence vignettes in his 2018 Treatment. (TAC ¶¶ 30(a-e); 2018 Treatment at 3-6). More importantly, a comparison of the parties' works themselves shows that any character similarities exist *only* with respect to these "basest [of] components" and that any "similarities" can only be described, at the highest level of specificity, as "blond white male," "African-American female," a redhead, and a "darker complexion" male. These stock character elements are *not* protectable. *See, e.g., Alexander v. Murdoch*, 2011 U.S. Dist. LEXIS 79543, at *31 (S.D.N.Y. May 27, 2011) (rejecting contention that characters were "substantially similar because each is 'a stunningly beautiful, fiery, temperamental, Latina mother, with a thick accent, who's in love with her Caucasian [ex-husband/husband] and always makes him do the right thing, especially where her son is concerned'"), *adopted by*, 2011 U.S. Dist. LEXIS 79503 (S.D.N.Y. July 14, 2011); Mov. Br. 21 (collecting cases).

In yet another attempt to manufacture a claim of character similarity (*see* Mov. Br. 21 n.13 (noting Plaintiff's mixing and matching of character attributes)), the opposition contends that his "blond white [straight] male" and Defendants' "blond white [homosexual] male" are both "botanists" because, in Plaintiff's game, Carter is a botanist and, in Defendants' work, Lieutenant Stamets studies "plant mushrooms." (Opp. Br. 13). Assuming Plaintiff has a monopoly on "white blond male botanist" (he does not), Stamets is not a botanist because there is no such thing as a "plant mushroom." (*See* https://en.wikipedia.org/wiki/Mushroom (explain that mushrooms are fungi)). Rather, Stamets is a astromycologist that studies space-based fungi (*see* https://en.wikipedia.org/wiki/Mycology (explaining that mycology is the study of fungi) – a necessary occupation on a show with a propulsion drive running on mycelial spores. That feature of *Discovery* of course bears no similarity at all to any element of Plaintiff's work, nor to whatever form of botany (left undescribed in Plaintiff's works) that his Carter character may practice.

### 3. None of the Other Random "Similarities" Scattered Throughout the Parties' Works Are Actionable

Plaintiff's reliance (Opp. Br. 14-16) on the random assortment of the few other "similarities" he claims exist (the "egg-shaped" helmet, an "emitter," "ethereal" travel, blue and white dots) – all interspersed at random unrelated points in the parties' works – is equally unavailing.

The opposition fails to address the controlling legal principle that random similarities scattered throughout the parties' works cannot establish substantial similarity as a matter of law. As the Second Circuit has explained, "[s]uch a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Williams*, 84 F.3d at 590 (citations and quotation marks omitted; underline added). Courts in this District thus routinely reject copyright claims based on randomly scattered similarities like those identified by Plaintiff. *See, e.g., Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 663 (S.D.N.Y. 2011) ("[R]andom similarities scattered throughout the works … cannot [by themselves] support a finding of substantial similarity."); *Lewinson*, 659 F. Supp. 2d at 573 (same); *see also Kaye*, 297 F. Supp. 3d at 371 ("None of the isolated similarities … provides a sufficient basis for a reasonable jury to find substantial similarity between the works' 'total concept and overall feel.'") (citation omitted).

Plaintiff relies (Opp. Br. 16-17) upon *Ringgold v. Black Entm't TV, Inc.*, 126 F.3d 70 (2d Cir. 1997), for the proposition that the common use of these trivial elements even for "mere seconds" can constitute actionable infringement. That is wrong. In *Ringgold*, the Court rejected the defendant's position that its *wholesale* copying of plaintiff's exact poster as set decoration was *de minimis*, expressly distinguishing that circumstance from the one presented here. *Id.* at 75 ("[plaintiff's] poster itself, *not some poster that was similar in some respects to it*, was displayed on the set of defendants' television program") (emphasis added). Here, the commonalities between the parties' works as to the random elements Plaintiff identifies exist only at the highest level of

9

unprotectable abstraction, and are indeed *de minimis* and trivial. (Mov. Br. 22-23). This random assortment of scattered elements "cannot support a finding of substantial similarity." *Williams*, 84 F.3d at 590 (citation and quotation marks omitted).

### II. PLAINTIFF DOES NOT ALLEGE ANY INFRINGING PREDICATE ACT IN THE UNITED STATES AGAINST NETFLIX

Plaintiff attempts to remedy the failure in the TAC to allege any infringing predicate act by Netflix in the United States (Mov. Br. 23-24) by now "alleging" in a legal brief that, "[u]pon information and belief CBS transferred a master copy(ies) of Star Trek Discovery to Netflix within the United States…." (Opp. Br. 2). It is axiomatic that "[a] plaintiff cannot amend his pleadings via his opposition to a motion to dismiss." *Jackson v. N.Y. State Office of Mental Health*, 2012 U.S. Dist. LEXIS 114531, at *34 (S.D.N.Y. Aug. 13, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 165876 (S.D.N.Y. Nov 15, 2012). But even if Plaintiff were permitted to do so – and he is not (*see* DE 45 at 5; 1/8/19 Tr. (DE 52) at 15:14-22) – the mere *receipt* of an allegedly infringing work does not violate any exclusive right, is not infringement, and thus cannot constitute the necessary predicate infringement in the United States to support Netflix's inclusion in this action. (Mov. Br. 23-24).

### III. PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES IS UNEQUIVOCALLY BARRED BY SECTION 412 OF THE COPYRIGHT ACT

Plaintiff's opposition cites to Section 505 of the Copyright Act (Opp. Br. 20-21) for the undisputed proposition that attorneys' fees may generally be awarded in copyright actions. Plaintiff ignores the equally indisputable and more relevant proposition that, pursuant to Section 412(2), Plaintiff cannot recover attorneys' fees because his June 28, 2018 copyright registration postdates the commencement of the alleged infringements. (Mov. Br. 24-25). "Even '[w]here the alleged infringement begins before registration and continues after registration, statutory damages <u>and attorney fees</u> are still unavailable.'" *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2016 U.S. Dist. LEXIS 101119, at *5 (S.D.N.Y. Aug. 2, 2016) (citation omitted; emphasis added).

10

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the TAC be dismissed in its entirety, with prejudice.

Dated: New York, New York
March 12, 2019

                LOEB & LOEB LLP

                By: _/s/ Wook Hwang_____
                     Wook Hwang
                     Nathalie Russell
                     345 Park Avenue
                     New York, New York 10154-1895
                     (212) 407-4000

                *Attorneys for Defendants CBS Broadcasting Inc., CBS Corporation, CBS Interactive Inc., and Netflix, Inc.*